**GRYMES HILL MANOR ESTATES**

v.

**The UNITED STATES.**

**No. 311–66.**

United States Court of Claims.

March 17, 1967.

Carl L. Shipley, Washington, D. C., attorney of record, for plaintiff. Shipley, Ackerman & Pickett, Washington, D. C., and Irving W. Konigsberg, Cleveland, Ohio, of counsel.

Russell W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Herbert N. Maletz with directions to make his recommendation for conclusions of law on defendant's motion to dismiss and plaintiff's plea for judgment on the pleadings. The commissioner has done so in a report and opinion filed on November 30, 1966. The case has been submitted to the court on the briefs of the parties without oral argument of counsel. Since the court agrees with the commissioner's report, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore not entitled to recover, defendant's motion to dismiss is granted and plaintiff's petition is dismissed. Cf. Forrest Village Apts., Inc. v. United States, Ct.Cl., 371 F.2d 500 decided January 20, 1967; Forrest Village Apts., Inc. v. United States, 371 F.2d 500, 173 Ct.Cl. 1179 (1965), cert. denied, 383 U.S. 943, 86 S.Ct. 1197 (1966); Camellia Apts., Inc. v. United States, 334 F.2d 667, 167 Ct.Cl. 224 (1964), cert. denied, 379 U.S. 963, 85 S.Ct. 653, 13 L.Ed. 2d 557 (1965).

## OPINION OF COMMISSIONER *

MALETZ, Commissioner:

Section 603(c) of the National Housing Act (12 U.S.C. § 1738(c) (1958)) author-

izes the Commissioner of the Federal Housing Administration to fix a premium charge for the insurance of mortgages under that Act at an amount between one-half of 1 per centum per annum and 1½ per centum per annum of the amount of the principal obligation of the mortgage. The section further provides:

In the event that the principal obligation of any mortgage accepted for insurance under this subchapter is paid in full prior to the maturity date, the Commissioner is further authorized in his discretion to require the payment by the mortgagee of an adjusted premium charge in such amount as the Commissioner determines to be equitable, but not in excess of the aggregate amount of the premium charges that the mortgagee would otherwise have been required to pay if the mortgage had continued to be insured under this subchapter until such maturity date; * * *

Pursuant to this authority and the authority of section 607, which empowered the Commissioner "to make such rules and regulations as may be necessary to carry out the provisions of this subchapter" (12 U.S.C. § 1742 (1958)), the Commissioner issued the following regulation (24 CFR § 282.4 (1949)):

*Prepayment premium charges.* (a) In the event that the principal obligation of any mortgage accepted for insurance is paid in full prior to maturity, the mortgagee shall within thirty (30) days thereafter notify the Commissioner of the date of prepayment and shall collect from the mortgagor and pay to the Commissioner an adjusted premium charge of one percent (1%) of the original face amount of the prepaid mortgage * * *

Against this background, plaintiff has filed a petition here alleging that it was the mortgagor-owner of a multifamily rental project in Staten Island, New York; that the project was financed in

---

\* The opinion and recommended conclusion of law are submitted pursuant to order of the court under Rule 54(b). The facts are stated in the opinion.

part in December 1949 by a mortgage in the amount of $1,314,900 that was insured by the FHA pursuant to section 608 of the National Housing Act (12 U.S.C. § 1743 (1958)); that in January 1966 plaintiff refinanced the project with a conventional mortgage; and that as a prerequisite to giving its consent to the refinancing, the F.H.A., in accordance with the above regulation, required plaintiff to pay a prepayment premium charge of one per cent of the original amount of the insured mortgage (i. e., a prepayment charge of $13,149), which was paid under protest. Plaintiff seeks to recover that amount here, contending that section 603(c) of the National Housing Act to the extent that it authorizes the FHA Commissioner "in his discretion to require the payment by the mortgagee of an adjusted premium charge in such amount as * * * [he] determines to be equitable" is an unlawful delegation of legislative authority forbidden by Article 1, Section 1 of the Constitution [1] in that the delegation assertedly is not related to any stated standard or statutory purpose but rather gives the Commissioner unfettered discretion to collect a prepayment premium charge.

 There can be little doubt though that the statute is a valid delegation of legislative power. To satisfy the constitutional requirement, "it is not necessary that Congress supply administrative officials with a specific formula for their guidance," Lichter v. United States, 334 U.S. 742, 785, 68 S.Ct. 1294, 1316, 92 L.Ed. 1694 (1948); it is enough if Congress lay down an intelligible standard to which administrative action must conform. E. g., Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928). In the present case, the standard to which the Commis-

sioner's action must conform—i. e., that the prepayment charge be equitable and not exceed the aggregate amount of the premium charges that the mortgagee would otherwise have been required to pay if the mortgage had continued to be insured under the Act until the maturity date—is sufficiently definite and intelligible to serve as a constitutionally permissible guide for administrative action. For the policy of the statutory provision is clearly apparent,[2] the Congress has delineated the public agency to apply it, and has fixed the boundaries of the delegated authority. This is constitutionally sufficient. American Power Co. v. SEC, 329 U.S. 90, 105, 67 S.Ct. 133, 91 L.Ed. 103 (1946). "To require more would be to insist on a degree of exactitude which not only lacks legal necessity but which does not comport with the requirements of the administrative process. Delegation by Congress has long been recognized as necessary in order that the exertion of legislative power does not become a futility * * * But the effectiveness of both the legislative and administrative processes would become endangered if Congress were under the constitutional compulsion of filling in the details of a statute beyond the liberal prescription here. Then the burdens of minutiae would be apt to clog the administration of the law and deprive the agency of that flexibility and dispatch which are its salient virtues." Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 398, 60 S.Ct. 907, 915, 84 L.Ed. 1263 (1940). See also United States v. Rock Royal Coop., 307 U.S. 533, 577, 59 S.Ct. 993, 83 L.Ed. 1446 (1939); Bowles v. Willingham, 321 U.S. 503, 515, 64 S.Ct. 641, 88 L.Ed. 892 (1944).

The present standard, moreover, is no less definite or precise in nature and

1. The constitutional provision reads: "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

2. That policy, as pointed out in Camellia Apartments, Inc. v. United States, 334 F.2d 667, 671, 167 Ct.Cl. 224, 230 (1964),

cert. denied, 379 U.S. 963, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965), is that the FHA operate a financially sound mortgage insurance program through deterring "mortgagors whose loss potential was relatively slight from turning to private financing, leaving * * * [FHA] with only those mortgages that had no appeal to non-insured lenders."

confers no greater reach for administrative determination than the following legislative specifications which have been held to express a sufficiently definite constitutional standard for administrative action: "Excessive profits," Lichter v. United States, supra, 334 U.S. at 783, 68 S.Ct. 1294; "just and reasonable rates," FPC v. Hope Natural Gas Co., 320 U.S. 591, 600, 64 S.Ct. 281, 88 L.Ed. 333 (1944); "fair and reasonable prices," Yakus v. United States, 321 U.S. 414, 424, 64 S.Ct. 660, 88 L.Ed. 834 (1944); prices yielding a "fair return" on the "fair value of property," Sunshine Anthracite Coal Co. v. Adkins, supra, 310 U.S. at 397–98, 60 S.Ct. 907; "unfair methods of competition," distinct from offenses defined under the common law, FTC v. R. F. Keppel & Bro., 291 U.S. 304, 311–312, 314, 54 S.Ct. 423, 78 L.Ed. 814 (1934); "public interest," New York Central Securities Corp. v. United States, 287 U.S. 12, 24, 53 S.Ct. 45, 77 L.Ed. 138 (1932). In short, unlike the statutes involved in A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), there is no grant here of unbridled administrative discretion; "the fact that there is a zone for the exercise of discretion by the * * * [Commissioner] is no more fatal here than in * * * [the] situations [recounted above] where Congress has prescribed the general standard and has left to an administrative agency the determination of the precise situations to which the provisions of the Act will be applied." Bowles v. Willingham, supra, 321 U.S. at 516, 64 S.Ct. at 648. See also Opp Cotton Mills, Inc. v. Administrator, 312 U.S. 126, 144, 61 S.Ct. 524, 85 L.Ed. 624 (1941).

██ It is further argued that the regulation is a rule of general applicability that was promulgated without hearing or notice to plaintiff, and that as a result plaintiff has been deprived of its property without just compensation. There is no statutory requirement, however, that an evidentiary hearing must be held each time a mortgage insured by the FHA is prepaid before the Commissioner may require payment of the prepayment premium. In fact, the functions conferred by section 603 of the Housing Act (12 U.S.C. § 1738 (1958)) are specifically excluded from the operations of the Administrative Procedure Act. See 5 U.S.C. § 1001(a) (1958). What this court said in Camellia Apartments, Inc. v. United States, supra, 167 Ct.Cl. at 230–231, 334 F.2d at 671–672, in response to a similar argument is applicable here: "[The mortgage insurance] fund was generated by prior premium payments by mortgagors situated similarly to plaintiffs, including payments exacted under this regulation. Plaintiffs now seek to benefit because those payments helped to build up a large fund * * * [T]he fact remains that not the least of the elements of a program designed to be 'equitable' is that persons in like circumstances receive like treatment. The FHA did not require plaintiffs to do anything more than was required of other mortgagors who wished to refinance. Indeed, it is plaintiffs who seek preferred treatment, since they seek to benefit from the payments made by others. We conclude that the Commissioner was well within his rights to require plaintiffs to make payments on the same basis as other mortgagors. For the same reason, we must reject plaintiffs' contention that the Commissioner shirked his duty in deciding their cases under a general regulation and by failing to accord them an evidentiary hearing." [3]

It is concluded that defendant's motion to dismiss should be granted and that plaintiff's petition should be dismissed.

---

**3.** The regulation involved in the Camellia Apartments case was the same one that is involved here and was held to be valid and properly enforced against the claimants.