**BARRINGTON MANOR APARTMENTS CORPORATION**

v.

**The UNITED STATES.**

No. 17-66.

United States Court of Claims.

March 15, 1968.

————◆————

Carl L. Shipley, Washington, D. C., attorney of record, for plaintiff.

Sheldon J. Wolfe, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

This case was referred to then Trial Commissioner Herbert N. Maletz (now a Judge of the United States Customs Court) with directions to make recommendation for conclusions of law on defendant's motion and plaintiff's cross-motion for summary judgment under Rule 54(b). The commissioner has done so in an opinion and report filed on September 28, 1967. Defendant filed a request for review of the commissioner's opinion and report and the case was submitted to the court on argument by defendant only. Since the court agrees with the commissioner's opinion and recommendation, with minor modifications, it hereby adopts the same as modified, as hereinafter set forth, as the basis for its judgment in this case. Therefore, defendant's motion and plaintiff's cross-motion for summary judgment are denied without prejudice and further proceedings are suspended to enable plaintiff to apply for relief administratively.

Commissioner Maletz' opinion as modified by the court is as follows:

This case involves a regulation of the Federal Housing Administration (24 C. F.R. § 207.253 (1966)) which imposes "an adjusted premium * * * charge" of one percent of the original face amount of an FHA-insured mortgage if the mortgage is prepaid in full or the contract is voluntarily terminated after five years from the date of initial endorsement for insurance. The regulation affords exemption from payment of the premium charge in certain specified cases, providing in part that:

(c) No adjusted premium charge shall be due the [FHA] Commissioner in the following cases:

* * * * * *

(2) Where the final maturity specified in the mortgage is accelerated solely by reason of partial prepayments made by the mortgagor which do not exceed in any one calendar year 15 percent of the original face amount of the mortgage; or

* * * * * *

(10) Where the mortgage has been insured for 10 or more years and the Commissioner determines the following:

(i) The mortgaged property has been operated at a deficit over a substantial period and major rehabilitation will help to remedy this condition.

(ii) FHA financing for rehabilitation is not feasible.

(iii) Financing obtained to prepay the insured mortgage will also finance the necessary rehabilitation and make the project competitive with other available rentals.[1]

---

1. The regulation was issued pursuant to section 603(c) of the National Housing Act (12 U.S.C. § 1738(c) (1958)) which authorizes the Commissioner to require the mortgagee to pay an adjusted premium charge in such amount as the Commissioner determines to be equitable in the event an FHA-insured mortgage is paid in full prior to maturity. Both this statute and the regulation have been the subject of prior litigation in this court in which it has been held (i) that the statute is a constitutionally permissible delegation of legislative power, Grymes Hill Manor Estates v. United States, 179 Ct.Cl. 466, 373 F.2d 920 (1967); and

(ii) that the regulation is valid and not in contravention of the Congressional mandate that prepayment charges must be "equitable" in amount. Camellia Apartments, Inc. v. United States, 167 Ct.Cl. 224, 334 F.2d 667 (1964), cert. denied, 379 U.S. 963, 85 S.Ct. 653, 13 L.Ed. 2d 557 (1965). See also Forrest Village Apartments, Inc., 173 Ct.Cl. 1179 (1965), cert. denied, Forrest Village Apartments, Inc. v. United States, 383 U.S. 943, 86 S.Ct. 1197, 16 L.Ed.2d 207 (1966); Forrest Village Apartments, Inc. v. United States, 178 Ct.Cl. 490, 371 F.2d 500 (1967).

*   *   *   *   *   *

Plaintiff owns and operates a multi-family rental apartment project in Barrington, New Jersey, the construction of which was financed in 1949 by an FHA-insured mortgage loan of $2,262,200 that was to mature in 1983. On June 29, 1965, plaintiff wrote the Camden, New Jersey, office of FHA that it was contemplating the refinancing of the project under a conventional mortgage and that it was its understanding that if an FHA-insured loan of the type involved was refinanced on a conventional basis for purpose of rehabilitation it was "possible to have the prepayment penalty of one per cent * * * of the face amount of the mortgage waived." In such circumstances, plaintiff requested advice as to the procedure necessary to request this relief. Citing the above-quoted regulation, the FHA office replied in part on June 30, 1965:

It would appear to us that Barrington Manor would not fall within this provision [paragraph (c) (10)] since our analysis indicates the project has not been operated at a deficit over a substantial period, nor could we determine that FHA financing for rehabilitation is not feasible inasmuch as we do not have a proposal from you for refinancing.

In the event that you are interested in refinancing with a new FHA insured mortgage under the provisions of Sec. 207 pursuant to Sec. 223, we would suggest that you indicate your proposal on the attached FHA Forms 2012 and submit the form together with any pertinent data for our consideration.[2]

Defendant's files do not reflect that plaintiff submitted the information requested on the Form 2012. On August 3, 1965, plaintiff prepaid in full the balance of $1,606,884.60 due on its loan and the FHA imposed a prepayment premium charge of one percent of the original amount of the mortgage (i. e., a premium charge of $22,622). Thereafter, on August 7, 1967, plaintiff wrote to FHA headquarters in Washington, D. C., stating that it was paying the one percent premium charge under protest. Its letter continued:

It was necessary to refinance this project as it has been operating at a considerable loss and additional money was necessary to keep the said project in operation.

We therefore request a waiver of the *(1%) prepayment penalty* and request a refund of the $22,622.00 paid under protest.

We have made a request to the District Director in Camden to waive the penalty and have been denied our request. [Emphasis in original.]

The FHA replied on August 12, 1965, that plaintiff's letter was silent as to the particular section of the regulations governing FHA-insured mortgages upon which plaintiff was basing its request and asked plaintiff to advise it in this regard so that it could properly determine whether the premium charge could be adjusted in this case. Plaintiff failed to respond to this request, but rather brought suit here to recover the $22,622 prepayment charge.[3] Its con-

---

2. Part C, par. 64205, of the FHA Manual sets forth guidelines to assist office directors in determining whether a request for an exception under paragraph (c) (10) may be granted. Under this provision the office director is required to obtain from the mortgagor prepaying a mortgage specified accounting data and information and then, if satisfied that specified requirements would be fully met, submit his recommendation, together with the data received, to the Director, Rental Housing Division, for decision as to the granting of an exemption.

3. In the alternative, plaintiff claims that it is entitled to recover 15 percent of the $22,622 prepayment charge on the ground that paragraph (c) (2) of the regulation assertedly provides that no prepayment charge will be exacted from a mortgagor for prepayments up to 15 percent in any one calendar year. This alternative claim has no basis for it is clearly not within the scope of paragraph (c) (2) of the regulation. As this court said in rejecting an identical claim under the same provision of the regulation: "Paragraph (c) (2), by its terms,

tention is twofold; first, that the FHA regulation in question is invalid on the ground that it was not adopted and promulgated in accordance with the Administrative Procedure Act, and second, that the "FHA's ruling of June 30, 1965" to the effect that the project had not been operated at a deficit over a substantial period is erroneous and not supported by substantial evidence and that the action of the FHA in assertedly refusing to abide by its own regulation and waive the one percent charge is, therefore, arbitrary and capricious. Defendant moves for summary judgment on the ground that the regulation is valid and that plaintiff has failed to exhaust its administrative remedies, to which plaintiff has countered by a cross-motion for summary judgment.

■ Plaintiff's first contention directed to the validity of the regulation is without merit. For (as this court has previously pointed out) the functions conferred by section 603 of the National Housing Act are specifically excluded (by 5 U.S.C. § 1001(a) (1958)) from the operations of the Administrative Procedure Act. Grymes Hill Manor Estates v. United States, supra, 179 Ct.Cl. at 472, 373 F.2d at 923. See also Camellia Apartments, Inc. v. United States, supra, 167 Ct.Cl. at 228, 334 F.2d at 670.

■ Moreover, it is apparent that plaintiff has failed to exhaust its administrative remedy. Clearly the FHA field office letter of June 30, 1965—contrary to plaintiff's characterization—did not constitute a ruling. (Indeed, the FHA field office had no authority under the agency manual to issue a ruling, see note 2, *supra.*) The comment in that letter that "it would appear to us that * * * [plaintiff] would not fall within this provision [*i. e.,* paragraph (c) (10) (i)]" was no more than a declaration marking a preliminary "stage in an in-

complete process of administrative * * [determination]." Rochester Telephone Corp. v. United States, 307 U.S. 125, 143, 59 S.Ct. 754, 83 L.Ed. 1147 (1939); El Dorado Oil Works v. United States, 328 U.S. 12, 18–19, 66 S.Ct. 843, 90 L. Ed. 1053 (1946); cf. United States v. Atlanta B. & C. R. Co., 282 U.S. 522, 51 S.Ct. 237, 75 L.Ed. 513 (1931). Plaintiff not only failed to furnish the FHA office with accounting data to show that it had operated at a deficit over a substantial period of time, it also failed to submit the Form 2012 and other data in order that the FHA could determine whether or not the two additional conditions necessary for an exemption under paragraph (c) (10) had been met, *i. e.,* that FHA refinancing for rehabilitation was not feasible and that refinancing to prepay the insured mortgage would also finance the necessary rehabilitation. The FHA office acted in accordance with its regulation and its manual in notifying plaintiff that it should furnish this information. Instead of complying with this request, plaintiff paid the premium charge, by-passed the FHA Commissioner and now calls on this court to determine the dispute which should have been fully presented in the first instance to the Commissioner.

■ It is, of course, a fundamental principle that (except in unusual circumstances) a claimant must exhaust his administrative remedy before resort is had to the courts. E. g., Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938); United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 429–430, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966); Davis, Administrative Law Treatise (1958) §§ 20.01 et seq. The principle "involves a policy of orderly procedure which favors a preliminary sifting process, particularly with respect to matters peculiarly

---

applies only to '*partial* prepayments' of not more than 15 percent of the mortgage principal made '*in any one calendar year.*' Since plaintiffs paid more than the maximum permissible amount in one such year, they do not come within the

terms of this exception." Forrest Village Apartments, Inc. v. United States, supra, 178 Ct.Cl. at 497, 371 F.2d at 504. [Emphasis in original.] See also Camellia Apartments, Inc. v. United States, supra, 167 Ct.Cl. at 231, 334 F.2d at 672.

within the competence of the administrative agency, [and] avoidance of interference with the functions of the administrative agency by withholding judicial action until the administrative action has run its course. * * *" 2 Am.Jur.2d, Administrative Law, § 595, p. 428. See also e. g., Blackmar v. United States, 173 Ct.Cl. 1035, 1044–1045, 354 F.2d 340, 346–347 (1965). These considerations apply with particular force here where Congress has vested in the FHA Commissioner and not the court the responsibility for deciding (in the first instance) whether an exemption for payment of the prepayment charge should be granted. It would be intolerable in such circumstances to allow a litigant to withhold his claim from the administrative agency and present it to this court instead. Long v. United States, 148 Ct.Cl. 4, 9 (1960).

■■ The task remaining is to determine what consequence follows from plaintiff's failure to exhaust its administrative remedy. We start with the established principle that where a statute or regulation prescribes a time period for seeking administrative relief and the claimant fails to pursue that remedy within the time specified, his right to judicial relief (in the absence of unusual circumstances) is foreclosed. E. g., Blackmar v. United States, supra, 173 Ct.Cl. 1035, 354 F.2d 340; Martilla v. United States, 118 Ct.Cl. 177 (1950); Adler v. United States, 134 Ct.Cl. 200, 146 F.Supp. 956 (1956), cert. denied sub nom., Baker v. United States, 352 U.S. 894, 77 S.Ct. 131, 1 L.Ed.2d 87. See also Comment, Exhaustion of Administrative Remedies, 39 Cornell L.Q. 273, 277 (1954). In such a situation, it is obvious that it would be futile for the courts to suspend proceedings to enable the litigant to obtain an administrative determination; the litigant has foreclosed that opportunity by failing to pursue that remedy within the time required. The present situation is quite different, however, for the regulation with which we are now concerned contains no time limit for plaintiff to seek (or obtain) an exemption from the prepayment premium charge. Thus, were the present action to be dismissed for failure to exhaust, plaintiff could still file application with the FHA for refund of the premium charge and in the event of an adverse decision proceed with a new suit here to challenge that determination.[4]  Cf. Sohm v. Fowler, 124 U.S.App.D.C. 382, 365 F.2d 915, 917 (1966). In such circumstances, the appropriate procedure here is to suspend further proceedings so that plaintiff may have its claim passed on administratively by the FHA. See Hertzog v. United States, 167 Ct.Cl. 377, 389 (1964). "Holding * * * [the] suit in abeyance until the * * * [FHA] completes its action would comply with the basic policy of the law that administrative remedies should be exhausted so long as the agency clearly has jurisdiction over the case and so long as resort to the agency is not obviously futile." Sohm v. Fowler, supra, 365 F. 2d at 917–918.[5]  Though plaintiff has not clearly alleged that it meets the conditions for waiver of the one percent penalty, we assume, in view of its correspondence with FHA and its allegation that the agency erred in failing to waive the penalty, that it does make that claim; therefore we do not dismiss the petition out of hand on that ground.

In summary, it is concluded (i) that defendant's motion for summary judgment and plaintiff's cross-motion for

4. Since the dismissal would not be on the merits, res judicata would not bar a new suit. Res judicata is applicable only where a final judgment on the merits has been entered. E.g., Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597–598, 68 S.Ct. 715, 92 L.Ed. 898 (1948). See also 1B Moore, Federal Practice (2d ed.) § 0.405.

5. Plaintiff filed suit about six months after FHA's letter of June 30, 1965, and therefore cannot be said to have delayed unreasonably in pursuing its claim. The case for suspension might well be different if the delay were long or unreasonable.

summary judgment are denied without prejudice, and (ii) that further proceedings are suspended to enable plaintiff to apply for relief administratively.