**BARRINGTON MANOR APARTMENTS CORPORATION**

v.

**The UNITED STATES.**

**No. 17–66.**

United States Court of Claims.

May 12, 1972.

Carl L. Shipley, Washington, D. C., attorney of record, for plaintiff. John Barry Donohue, Jr. and Shipley, Akerman, Stein & Kaps, Washington, D. C., of counsel.

Sheldon J. Wolfe, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

The parties' cross-motions for summary judgment again bring before us plaintiff's claim involving 24 C.F.R. § 207.253 (1966), a regulation of the Federal Housing Administration (FHA), now in the Department of Housing and Urban Development. The regulation imposes an "adjusted premium charge" of one percent of the original face amount of an FHA-insured mortgage if the mortgage is prepaid in full or the contract of insurance is voluntarily terminated after 5 years from the date of initial endorsement for insurance. The regulation also affords exemption from payment of the premium charge in certain specified cases, providing in part that:

> (c) No adjusted premium charge shall be due the [FHA] Commissioner in the following cases:
>
> \* \* \* \* \* \*
>
> (2) Where the final maturity specified in the mortgage is accelerated solely by reason of partial prepayments made by the mortgagor which do not exceed in any one calendar year 15 percent of the original face amount of the mortgage; or
>
> \* \* \* \* \* \*
>
> (10) Where the mortgage has been insured for 10 or more years and the

Commissioner determines the following:

(i) The mortgaged property has been operated at a deficit over a substantial period and major rehabilitation will help to remedy this condition.

(ii) FHA financing for rehabilitation is not feasible.

(iii) Financing obtained to prepay the insured mortgage will also finance the necessary rehabilitation and make the project competitive with other available rentals.

The background facts are set out in Barrington Manor Apts. Corp. v. United States, 392 F.2d 224, 183 Ct.Cl. 312 (1968), and will not be repeated here. Suffice it to say that, when its claim was last before us, plaintiff contended (1) that the regulation in question was invalid because it was not adopted and promulgated in accordance with the Administrative Procedure Act, and (2) that an asserted "ruling" by the agency that plaintiff was not exempt from payment of the premium charge because its project had not been operated at a deficit over a substantial period was erroneous, not supported by substantial evidence, and an arbitrary and capricious failure of the agency to abide by its regulation. We found plaintiff's first contention to be without merit. With respect to its second contention, we found that the agency had issued no "ruling" on plaintiff's claim. Since it was still possible for plaintiff to apply for administrative refund of the premium charge which it had paid, we suspended further proceedings in this court to enable plaintiff to exhaust its administrative remedies. *Barrington Manor Apts. Corp., supra.* On December 8, 1970, the agency rendered its final decision denying plaintiff exemption from payment of the premium charge, and the proceedings before us were resumed.

## I

Having sought administrative relief, plaintiff makes several alternative contentions. First, it seeks to recover the premium charge which it paid in the amount of $22,622 on the grounds that the agency's December 8, 1970 decision was arbitrary, capricious, and unsupported by substantial evidence. The agency found that plaintiff failed to satisfy the criteria for exemption under paragraph (c) (10) of the regulation because the mortgaged property was not operated at a deficit over a substantial period, but in fact had a net cash throw-off for the period 1961 through 1964; there was no need for major rehabilitation because the physical inspection reports indicated the general condition of the project to be good; and plaintiff did not demonstrate to the agency's satisfaction that the private financing obtained to prepay the mortgage also financed the necessary rehabilitation.

Plaintiff asserts that the question of whether or not there was a "deficit" within the meaning of paragraph (c) (10) (i) must be determined in accordance with what plaintiff's accountant refers to as sound accounting principles rather than the net cash throw-off method employed by the agency: [1]

While cash flow or cash throw-off is a statement useful in determination of the availability of the excess of receipts from all sources (including perhaps loans for example) over expenditures (including payments for amortization of mortgage, capital expenditures, etc.), it is apparent that such a statement might reflect only the excess of receipts from all sources over disbursements of all character, and thus have no relationship to income or loss determinable under sound accounting principles.

For its part, defendant says that plaintiff attempts to equate the term "deficit" as it is used in the regulation with the term "loss" as that term might be used for federal income tax purposes. It is defendant's position that the two terms cannot be equated because the

---

1. A statement prepared by plaintiff's accountant and sent to plaintiff's counsel on December 2, 1971.

purpose of the regulation is to determine the existence of "excess cash" which, of course, could be used for rehabilitation. We agree. Rather than indicating any error in such a distinction, the statement of plaintiff's accountant is quite consistent with, and in fact supports it. Furthermore, the unchallenged evidence of record is that it is a matter of common knowledge to all owners whose mortgages are insured or held by the Federal Housing Administration, that the agency has used the net cash throw-off method in the servicing of loans to determine whether a "deficit" exists for more than 10 years, and that the method has been used to determine the existence of a "deficit" under 24 C.F.R. § 207.253(c) (10) ever since the regulation was issued in 1965.

■ Although the inspection reports concededly indicate that the property was not in a rundown condition, plaintiff argues that improvement was necessary in order for the project to become competitive with higher grade properties in the area and thus overcome its operating deficit. Assuming *arguendo* that the project was operating at a "deficit" within the meaning of paragraph (c) (10) (i) of the regulation, that paragraph also requires a need for "major rehabilitation." The agency's guidelines for determining whether a mortgagor's request for exemption under paragraph (c) (10) may be granted are contained in the agency's Insured Project Servicing Handbook (September 1970), providing in part that:

> (2) The *"major rehabilitation"* will normally be of such scope and nature that the mortgagor will have to incur a capital expenditure in a sum at least equal to $1,000 per dwelling unit. [Handbook at 2.]

Since plaintiff's project contained 324 units, the guideline requires the expenditure of at least $324,000 in order to make the improvements "major rehabilitation" within the meaning of 24 C.F.R. § 207.253(c) (10) (i). At the very most, plaintiff's submissions to the agency documented a cost for rehabilitation in the amount of $200,000 which falls far short of the guideline. Plaintiff does not seriously contest the $1,000 per dwelling unit requirement, but merely asserts that rehabilitation expenses of $200,000 are certainly "major."

■ Plaintiff also attacks the agency's finding that it did not demonstrate to the agency's satisfaction that the private financing obtained to prepay the mortgage also financed the necessary rehabilitation. In this regard, the agency's guidelines provide that:

> (5) *The mortgagor must execute an affidavit* to the effect that refinancing funds are being obtained for the purpose of rehabilitating the property primarily for residential use and, further, that the mortgagor intends to continue such use. The affidavit must also contain a provision that it is being given to induce the Assistant Secretary for Renewal and Housing Management to grant an exemption from payment of the adjusted premium charge. [Handbook at 2–3.]

Again, plaintiff does not seriously contest the correctness of the regulation or guideline. Plaintiff's argument presupposes the existence of an operating "deficit" which "major rehabilitation" would help remedy. On the basis of that assumption, plaintiff contends that the following statement by its accountant, which was submitted to the agency, showed that the refinancing was for the purpose of rehabilitation:

> * * * it was felt that refinancing through the F.H.A. for the purpose of rehabilitation could not be satisfactorily accomplished. And, they considered themselves [plaintiff's officers] most fortunate at being able to obtain a commitment for refinancing on a conventional basis.

This statement clearly fails to comply with the guideline set forth by the agency.

■ In sum, it is settled that the construction given to a law or regulation

by those responsible for carrying it out is entitled to great weight and ought not to be overruled without good reasons and unless plainly erroneous. Harris v. United States, 153 Ct.Cl. 425, 431 (1961). The evidence of record does not show that plaintiff qualified for exemption from payment of the premium charge under 24 C.F.R. § 207.253(c) (10), nor has plaintiff shown that the agency's regulation or its construction thereof is plainly erroneous. Plaintiff does argue that the agency should have requested additional information of plaintiff if its administrative submission was insufficient. Plaintiff, however, clearly had the burden before the agency of proving its right to exemption under the regulation. The criteria for exemption as set out in the regulation and guidelines thereto are not so vague that plaintiff can now complain that its request for exemption was tested by some unknown standard. We reject plaintiff's argument that the agency's decision denying plaintiff's request for exemption was arbitrary, capricious, or unsupported by substantial evidence.

## II

■ In the event that it is not entitled to exemption from payment of the $22,622 premium charge, plaintiff seeks to recover 15 percent of that amount based upon paragraph (c) (2) of the regulation quoted above.[2]

Plaintiff concedes, as it must, that it does not come within the literal terms of this portion of the regulation. See Camellia Apts., Inc. v. United States, 334 F.2d 667, 672, 167 Ct.Cl. 224, 231 (1964), cert. denied, 379 U.S. 963, 85 S. Ct. 653, 13 L.Ed.2d 557 (1965) ; Forrest Village Apts., Inc. v. United States, 371 F.2d 500, 504, 178 Ct.Cl. 490, 497 (1967). Plaintiff's claim is that:

12 U.S.C. 1738(c) authorizes prepayment penalties only in an amount that

is "equitable", and that it is not equitable to charge a prepayment penalty on the basis of 100% of the prepayment, when a regulatory exemption for a 15% partial prepayment is provided. The first 15% is the same in either case.

We think this claim was decided against plaintiff in *Camellia Apts., Inc., supra,* 334 F.2d at 672, 167 Ct.Cl. at 231–232, where we stated:

It is true that under paragraph (c) (2) a mortgagor was privileged to prepay up to 15 percent of the face amount of the mortgage each year without paying a premium. The existence of this privilege, however, does not detract from the general policy behind the regulation. To the extent that payments are accelerated, the mortgagor's equity increases in size, and this may well be a desirable objective for its own sake. A mortgage that is partially prepaid, moreover, is a less risky proposition than one that bears a greater burden of debt. The ability to prepay is substantial evidence of the financial solidity of the mortgagor, and the Commissioner, in line with his general policy of upgrading his portfolio, might reasonably have desired to obtain and retain such a risk. *This policy and these objectives, of course, have no application to a prepayment—at whatever stage of the life of the mortgage—that is made pursuant to complete refinancing, which would remove the mortgage from the FHA's pool of risks.* [Emphasis supplied.]

■ Plaintiff's claim that paragraph (c) (2) provides disparity of treatment which offends the guarantee of equal protection of the law is also without merit for the reason that those similarly situated are similarly treated.

---

2. Defendant argues that this claim is barred by res judicata. However, defendant overlooks the fact that the prior proceedings were suspended in order to enable plaintiff to exhaust its administrative remedies and that no judgment was entered on this claim. *Barrington Manor Apts. Corp., supra.*

### III

Finally, plaintiff seeks interest on the premium charge of $22,622 from the date of payment to the date of the agency's final decision on the ground that there was a taking of its property, since plaintiff was not afforded notice and opportunity to present its case before making payment. It has already been decided that the FHA Commissioner has no duty to accord plaintiff an evidentiary hearing before requiring payment of the premium charge. *Camellia Apts., Inc., supra,* 334 F.2d at 671–672, 167 Ct.Cl. at 230–231; Grymes Hill Manor Estates v. United States, 373 F. 2d 920, 923, 179 Ct.Cl. 466, 472 (1967).

For the reasons stated, plaintiff is not entitled to recover on either of its alternative claims. Defendant's motion for summary judgment is granted; plaintiff's motion for summary judgment is denied, and the petition is dismissed.