Tom S. ACUNA et al.

v.

The UNITED STATES.

Arthur C. ARCHIBALD et al.

v.

The UNITED STATES.

Court P. ALLEN et al.

v.

The UNITED STATES.

Cecil B. BARNETT et al.

v.

The UNITED STATES.

Nos. 259–70, 292–70, 349–70 and 458–70.

United States Court of Claims.
June 20, 1973.

Robert C. Baxley, San Diego, Cal., atty. of record, for plaintiffs; Jones, Baxley, Crouch & McCarty, John S. Rhoades, and Holt, Rhoades & Hollywood, San Diego, Cal., of counsel.

Thomas E. Thomason, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT

SKELTON, Judge.

The 336 plaintiffs in these four cases are suing to recover compensation for work performed by them as immigration inspectors for the Immigration and Naturalization Service, United States Department of Justice (hereinafter sometimes referred to as the Service), at several different ports in three of the Service's four regions.[1] Plaintiffs regularly work six days a week and receive the equivalent of seven days' pay. They claim, however, that they are entitled by law to receive the equivalent of eight and one-half days' pay. The case is before the court on cross-motions for summary judgment.

In order to earn their annual salary, immigration inspectors are required to work a 40-hour week, normally comprised of five days, eight hours a day. The existing Immigration and Naturalization Regulations[2] state that the eight hours a day shall be performed between Monday and Saturday. In addition to the regularly scheduled 40-hour week, all immigration inspectors have been regularly required to perform inspectional duties for eight hours on Sunday in connection with the examination of persons entering the United States.[3] In effect, therefore, immigration inspectors are required to be on duty forty-eight hours a week, consisting of eight hours a day, six days a week, and one of those six days is always Sunday.

Since 1931, plaintiffs have received preferential pay treatment with respect to other Federal workers in the form of "extra compensation" for overtime, Sunday, and holiday work. The Act of March 2, 1931 grants immigration inspectors two days' extra compensation for Sunday and holiday duty.[4] Subsequently, the Federal Employees Pay Act of 1945 was passed which provides gen-

1. On March 1, 1971, this court ordered that these four petitions be consolidated pursuant to Rule 131(a).

2. Immigration & Naturalization Service Administrative Manual 2818.04, section 1c, dated May 15, 1962.

3. For purposes of its motion, defendant has admitted that plaintiffs regularly worked eight hours on Sundays during the claim periods and that this work was officially ordered or approved within the contemplation of agency regulations implementing the Federal Employees Pay Act of 1945, as amended, 5 U.S.C. § 5542 (a)(1970).

4. 46 Stat. 1467, as amended, 8 U.S.C. § 1353a (1970), reads as follows: "§ 1353a. Officers and employees; overtime services; extra compensation; length of working day.

erally that government employees' working hours officially ordered or approved in excess of 40 hours in an administrative workweek, or in excess of eight hours in a day, are overtime and shall be paid for at a premium rate of one and one-half times the basic hourly rate.[5] This latter act, however, contains an anti-pyramiding provision,[6] the effect of which is to prevent an employee from receiving premium pay under the 1945 Pay Act for the same services for which he is paid under another listed statute. Listed therein are "sections 1353(a) and 1353(b) of title 8," the Act of March 2, 1931.

The Immigration and Naturalization Service has designated the seven consecutive days beginning Sunday at 12:01 a. m. and running through Saturday, midnight, as the administrative workweek. Further, they have designated Monday through Saturday as the basic workweek for immigration inspectors. The placing of Sunday outside the basic five-day 40 hour workweek and making it the sixth work day of the administrative workweek by the Service had the effect of preventing the immigration inspectors from receiving one and one-half days' of premium pay under the 1945 Federal Employees Pay Act for the sixth day worked since they already receive two

> The Attorney General shall fix a reasonable rate of extra compensation for overtime services of immigration officers and employees of the Immigration and Naturalization Service who may be required to remain on duty between the hours of five o'clock postmeridian and eight o'clock antemeridian, or on Sundays or holidays, to perform duties in connection with the examination and landing of passengers and crews of steamships, trains, airplanes, or other vehicles, arriving in the United States from a foreign port by water, land, or air, such rates to be fixed on a basis of one-half day's additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond five o'clock postmeridian (but not to exceed two and one-half days' pay for the full period from five o'clock postmeridian to eight o'clock antemeridian) and two additional days' pay for Sunday and holiday duty; in those ports where the customary working hours are other than those heretofore mentioned, the Attorney General is vested with authority to regulate the hours of such employees so as to agree with the prevailing working hours in said ports, but nothing contained in this section shall be construed in any manner to affect or alter the length of a working day for such employees or the overtime pay herein fixed."

5. 5 U.S.C. § 5542 (1970), reads in pertinent part as follows:
"§ 5542. Overtime rates; computation.
(a) Hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or (with the exception of an employee engaged in professional or technical engineering or scientific activities for whom the first 40

> hours of duty in an administrative workweek is the basic workweek and an employee whose basic pay exceeds the minimum rate for GS–10 for whom the first 40 hours of duty in an administrative workweek is the basic workweek) in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter, at the following rates:
> (1) For an employee whose basic pay is at a rate which does not exceed the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of basic pay of the employee, and all that amount is premium pay.
> (2) For an employee whose basic pay is at a rate which exceeds the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of the minimum rate of basic pay for GS–10, and all that amount is premium pay."
> \*     \*     \*     \*     \*

6. 59 Stat. 302, as amended, 5 U.S.C. § 5549 (1970) provides as follows:
"§ 5549. Effect on other statutes.
This subchapter does not prevent payment for overtime services or for Sunday or holiday work under any of the following statutes—
(1) section 394 of title 7;
(2) sections 1353a and 1353b of title 8;
(3) sections 261, 267, 1450, 1451, 1451a, and 1452 of title 19;
(4) section 382b of title 46; and
(5) section 154(f)(3) of title 47.
However, an employee may not receive premium pay under this subchapter for the same services for which he is paid under one of these statutes."

additional days' pay for Sunday duty under the Act of March 2, 1931, for the same services. Plaintiffs work six days per week and receive the equivalent of seven days' pay. Their basic workweek runs from Monday through Saturday, during which period they work five days and get one day off. It is within the basic workweek that they must work their 40 hour week as a credit towards their annual salary. Thus, during the basic workweek plaintiffs work five days out of six and receive five days' pay. In addition, they are required to work on Sunday, which, under the present arrangement, is outside the basic workweek. Since Sunday is outside the basic workweek, Sunday work is not counted towards earning their annual salary. Plaintiffs do receive two additional days' pay as extra compensation under the Act of March 2, 1931 for work performed on Sunday. They do not receive one and one-half days of premium pay under the 1945 Federal Employees Pay Act for "eight hours of work officially ordered or approved in excess of 40 hours in an administrative workweek" because those eight excess hours of work are considered to have been performed on Sunday (as a result of the manner in which the Service has scheduled the administrative workweek and the basic workweek) and the anti-pyramiding provision of the Federal Employees Pay Act of 1945 does not permit an employee to receive premium pay under that Act for the same services for which he is paid under the Act of March 2, 1931.

■ The issue presented for decision in this case is whether the Immigration and Naturalization Service abused its discretion by scheduling Sunday outside of the basic workweek, where the administrative workweek commenced on Sunday, and plaintiffs were regularly and consistently required to work on Sundays, and the effect of such scheduling was to deny to plaintiffs premium pay under the Federal Employees Pay Act of 1945.

Plaintiffs contend that the basic workweek should begin on Sunday, the same day on which the administrative workweek begins, and that the Service's failure to so schedule the basic workweek is an abuse of discretion and an unreasonable interpretation of the relevant statutes. The effect of having the basic workweek commence on Sunday, as plaintiffs urge, is that the immigration inspectors would work a 40-hour period between Sunday and Friday, having one full day off, and then work overtime on Saturday. According to plaintiffs' theory, they should receive three days' pay for Sunday (one day's pay as a part of the basic workweek and two additional days' pay under the Act of March 2, 1931, for Sunday work) and one and one-half days' pay for Saturday (time and a half for overtime work in excess of 40 hours a week). In other words, plaintiffs claim that they are entitled to receive the equivalent of eight and one-half days' pay for six days of work.

Defendant's position is that the Service was given discretion to consider its costs and proper functioning in scheduling the basic workweek and that it has properly exercised its discretion by scheduling a basic workweek of five days during Monday through Saturday. We agree with the defendant and hold that there was no abuse of discretion on the part of the Service for all of the reasons set out below.

■ The Federal Employees Pay Act of 1945, 59 Stat. 303, as amended by the "Fringe Benefits Bill," 68 Stat. 1112, signed into law on September 1, 1954, subsequently amended and now codified as 5 U.S.C. § 6101(a) (1970), provides in pertinent part:

§ 6101. Basic 40-hour workweek; work schedules; regulations.

(a)(1) * * *

(2) The head of each Executive agency, military department, and of the government of the District of Columbia shall—

(A) establish a basic administrative workweek of 40 hours for each full-time employee in his organization; and

(B) require that the hours of work within that workweek be performed within a period of not more than 6 of any 7 consecutive days.

(3) *Except when the head of an Executive agency*, a military department, or of the government of the District of Columbia *determines that his organization would be seriously handicapped in carrying out its functions or that costs would be substantially increased*, he shall provide, with respect to each employee in his organization, that—

(A) assignments to tours of duty are scheduled in advance over periods of not less than 1 week;

(B) the basic 40-hour workweek is scheduled on 5 days, Monday through Friday when possible, and the 2 days outside the basic workweek are consecutive;

(C) the working hours in each day in the basic workweek are the same;

(D) the basic nonovertime workday may not exceed 8 hours;

(E) the occurrence of holidays may not affect the designation of the basic workweek; and

(F) breaks in working hours of more than 1 hour may not be scheduled in a basic workday. [Emphasis supplied.]

\*　　\*　　\*　　\*　　\*　　\*

The requirements contained in section 6101(a)(2)(A) and (B), that the head of the agency establish a basic workweek of 40 hours for each full-time employee and require that the hours of work within that workweek be performed within a period of not more than 6 of any 7 consecutive days are mandatory, as indicated by the use of the word "shall." Moreover, the basic workweek established by the Service in this case

clearly met these mandatory requirements. On the other hand, the several provisions contained in section 6101(a)(3), including the provision that the basic 40-hour workweek be scheduled on 5 days, Monday through Friday when possible, and that the 2 days outside the basic workweek be consecutive,[7] are subject to the discretion of the agency head. The above-cited statutory language makes it abundantly clear that in scheduling the basic 40-hour workweek the head of an Executive agency was given discretion to vary from the usual Monday through Friday workweek, etc., where he determined that the functions of the agency would be impeded or where the costs would be substantially increased as a result of following the various prescriptions of section 6101(a)(3). By providing for such discretion, Congress recognized that the proper functioning of certain agencies would require more latitude in the scheduling of basic workweeks.

5 U.S.C. § 6101(c) (1970) provides:

(c) The Civil Service Commission may prescribe regulations, subject to the approval of the President, necessary for the administration of this section insofar as this section affects employees in or under an Executive agency.

The implementing regulations promulgated by the Civil Service Commission do not require that the agency follow guidelines other than those set forth in section 6101(a)(2) and (3). Concerning the establishment of a basic workweek, 5 C.F.R. § 610.102(c) (1970), "Definitions," reads:

(c) "Basic workweek," for full-time employees, means the 40-hour workweek established in accordance with § 610.111.

5 C.F.R. § 610.111(a) (1970), "Establishment of Workweeks," then provides in part:

(a) The head of each agency, with respect to each group of full-time em-

---

**7.** Plaintiffs do not make any claim based on the scheduling of a basic workweek over six days, rather than five.

ployees to whom this subpart applies, shall establish by regulation:

(1) A basic workweek of 40 hours which does not extend over more than 6 of any 7 consecutive days. Except as provided in paragraphs (b) and (c) of this section, the regulation shall specify the calendar days constituting the basic workweek and the number of hours of employment for each calendar day included within the basic workweek.

\*     \*     \*     \*     \*     \*

In accordance with these directives and under the delegation of authority from the Attorney General, 28 C.F.R. § 0.144 (1970), the Commissioner of Immigration and Naturalization has by Immigration and Naturalization Service Administrative Manual (I & N Service AM) at 2818.03 (May 15, 1962) established a basic workweek as follows:

*Definitions:*

\*     \*     \*     \*     \*     \*

The term "basic workweek" for full-time officers and employees means the 40-hour workweek which shall not extend over more than six of the seven days in the administrative workweek.

The I & N Service AM, at 2818.04, further provides:

*Section 1c, Scheduling the Basic Workweek:* Daily tours of duty in the basic workweek shall be established within a maximum of 9 continuous clock hours, with 1 hour for food and rest. Normally, each tour will consist of 8 hours of duty over a period of 8 hours and 30 minutes. The basic workweek for immigration officers performing inspection duties shall be established on weekdays, Monday through Saturday, *including holidays occurring on those days,* but excluding Sunday. When it is impracticable to prepare work schedules in advance for periods of not less than two weeks that coincide with pay periods, as provided in AM 2961, such work schedules for the basic workweek must be prepared and posted not later than the close of business on the Friday preceding the week for which the work schedules apply. [Emphasis in original.]

With respect to the establishment of an administrative workweek, 5 C.F.R. § 610.102(a) and (b) (1970) state:

(a) "Administrative workweek" means a period of 7 consecutive calendar days designated in advance by the head of an agency under section 6101 of title 5, United States Code.

(b) "Regularly scheduled administrative workweek," for full-time employees, means the period within an administrative workweek, established in accordance with § 610.111, within which these employees are required to be on duty regularly. For part-time employees, it means the officially prescribed days and hours within an administrative workweek during which these employees are required to be on duty regularly.

5 C.F.R. § 610.111(a)(2) (1970) provides further that the head of each agency shall establish:

(2) A regularly scheduled administrative workweek which consists of the 40-hour basic workweek established in accordance with subparagraph (1) of this paragraph, plus the period of overtime work, if any, regularly required of each group of employees. Except as provided in paragraphs (b) and (c) of this section, the regulation, for purposes of leave and overtime pay administration, shall specify by calendar days and number of hours a day the periods included in the regularly scheduled administrative workweek which do not constitute a part of the basic workweek.

Consistent with these Civil Service Commission regulations, the Immigration and Naturalization Service in I & N Service AM at 2818.03 (May 5, 1962) has defined these terms as follows:

The term "administrative workweek" means the seven consecutive days from 12:01 a. m. Sunday to midnight Saturday.

\*     \*     \*     \*     \*     \*

The term "regularly scheduled administrative workweek" for full-time officers and employees means the period within an administrative workweek when such officers and employees are required to be on duty regularly.

■ The statute and implementing regulations thus describe an agency's discretion to designate a seven-day administrative workweek, and, within such administrative workweek, a five-day period known as a basic workweek. Further, the regularly scheduled administrative workweek includes the 40-hour basic workweek, plus regularly scheduled overtime. While a preference is expressed for a basic workweek running from Monday through Friday, and for the two days outside the basic workweek to be consecutive, the head of an agency is given discretion to deviate from this preferred pattern where he "determines that the agency would be seriously handicapped in carrying out its functions or that costs would be substantially increased." Since it is quite apparent that the Service was given discretion to consider agency functions and costs in scheduling the basic workweek, we must now consider whether it properly exercised that discretion.

In a memorandum dated November 2, 1954, the Commissioner of Immigration and Naturalization stated to the Attorney General of the United States (the head of the agency) that broad application of certain provisions of the September 1, 1954, amendment to the Federal Employees Pay Act of 1945 (including the provision that the basic 40-hour workweek be scheduled on 5 days and that the 2 days outside the basic workweek be consecutive) "would not only substantially increase costs, but might well cripple the Service." The memorandum requested that the Service be permitted to schedule and operate on hours of duty which deviated from those set forth in the 1954 amendment. In support of his request, the Commissioner attached to his memorandum a justification for exceptions from the provisions of the amendment. This justification contained an exhaustive discussion of the nature of work performed by immigrant inspectors and the inherent administrative difficulties in scheduling their hours of duty. The Attorney General granted the Commissioner's request that Immigration and Naturalization employees be excepted from these provisions of the amendment to the Pay Act where operations would suffer or costs would be increased, and the District Directors of the Immigration and Naturalization Service were so notified on November 12, 1954.

It is therefore clear that the Service, after carefully considering the mandate of the 1954 amendment and the discretionary exception therein contained, determined that an exception from the normal scheduling was justified, in view of agency functions and the costs involved.

Plaintiffs apparently do not deny that the Service had discretion to schedule the basic workweek in a manner different from that prescribed in the 1954 amendment to the Federal Employees Pay Act of 1945. Rather, plaintiffs complain that it was an abuse of discretion to schedule a basic workweek the beginning of which does not coincide with the beginning of the administrative workweek, since the effect of such scheduling denies them premium pay for regularly scheduled overtime work under the Federal Employees Pay Act of 1945.

Neither 5 U.S.C. § 6101(a) nor the Civil Service Commission's implementing regulations contain any suggestion that the first day of the administrative workweek on which employees regularly work must be the first day of the basic workweek. On the contrary, 5 C.F.R. § 610.111(b) (1970) strongly implies that this is not required. It states:

(b) When it is impracticable to prescribe a regular schedule of definite hours of duty for each workday of a regularly scheduled administrative workweek, the head of an agency may establish the first 40 hours of duty performed within a period of not more than 6 days of the administrative

workweek as the basic workweek, and additional hours of officially ordered or approved duty within the administrative workweek are overtime work.

The obvious implication to be drawn from permitting the first 40 hours of duty performed within the administrative workweek to be considered the basic workweek in a situation where it is impracticable to prescribe a regular schedule of duty, is that where a regular schedule of duty can be prescribed, as in the instant case, the basic workweek need not be the first 40 hours of duty performed. 5 C.F.R. § 610.111(a)(2) (1970), set out in full earlier in this opinion, merely states that the regulations established by the agency head, "for purposes of leave and overtime pay administration, shall specify by calendar days and number of hours a day the periods included in the regularly scheduled administrative workweek which do not constitute a part of the basic workweek." There is no requirement in the Civil Service Commission's regulation that work regularly scheduled beyond the 40-hour basic workweek be scheduled at the end of the administrative workweek, after the basic workweek has been completed. The requirement is simply that, once the agency has selected such period, its regulations specify the period by calendar day, etc., regardless of where in the administrative workweek it occurs. This is entirely consistent with the statute, wherein, as mentioned earlier, the only requirement not subject to agency discretion is that the agency head establish a basic workweek of 40 hours for each full-time employee and require that the hours of work within that workweek be performed within a period of not more than six of any seven consecutive days. Since the Service has established a basic 40-hour workweek over a period of six consecutive days, Monday through Saturday, and since its regulations clearly specify that Sunday is excluded from the basic workweek, the requirements of the statute and of the Civil Service Commission's implementing regulations have been met.

Moreover, there is no logical reason why an employee's basic workweek should necessarily commence on the first day of the administrative workweek that he is scheduled to work. Both the scheduling actually used by the Service and that proposed by the plaintiffs seem equally appealing from a purely logical point of view.

What plaintiffs are really arguing in this suit, when their argument is distilled to its purest form, is that the failure of the Service to schedule the basic workweek for immigration inspectors in a manner that would maximize all possible benefits under the pay statutes herein involved amounts to an abuse of discretion.

This argument contradicts the plain meaning of section 6101(a) which permits the head of an agency to consider costs in scheduling work. If Congress had intended a result like that which plaintiffs are urging herein, it would obviously not have given such discretion to the agencies. Nor would it have included the anti-pyramiding provision in section 5549. The manifest intent of Congress in passing section 5549 was to preserve overtime benefits already possessed by groups like the immigration inspectors while preventing them from being paid under two different overtime statutes for the same services. With that congressional purpose clearly in mind, it seems more appropriate to view the plaintiffs' proposed method of scheduling as a device to avoid the anti-pyramiding provisions then to view the Service's actual scheduling as a scheme to avoid paying plaintiffs overtime under the Federal Employees Pay Act of 1945.

Plaintiffs cite the case of Anderson v. United States, 136 Ct.Cl. 365 (1956) where this court stated, in reference to patrol inspectors of the Customs Border Patrol, as follows:

\* \* \* It may be that Congress would have been well advised to omit such employees from the Overtime Pay Act of 1945, or to make some different arrangement for their compen-

sation. But Congress did not omit them, and their superiors were not authorized to deny to them the benefits of the act, on the ground that the administration of the act would be difficult, almost to the point of impossibility, or that money had not been provided to pay the employees what they were entitled to under the law. [*Id.* at 367.]

*Anderson,* however, did not involve a claim for benefits under more than one overtime pay statute. The concern of the court there was that plaintiffs were compensated for overtime work. There is a vast difference between an agency acting to deprive its employees of pay benefits granted by a statute, and an agency exercising discretion conferred by statute in scheduling work so as not to maximize every conceivable pay benefit.

The practice of the agency in establishing a basic workweek of five days from Monday through Saturday and an administrative workweek from Sunday through Saturday is reasonable and in harmony with section 6101(a) and the implementing regulations thereunder. Where an agency's long-standing administration and interpretation of existing statutes and regulations is reasonable and not contrary to the language of those statutes it is entitled to great weight. State of Alabama v. United States, 461 F.2d 1324, 198 Ct.Cl. 683 (1972); Barrington Manor Apartments Corp. v. United States, 459 F.2d 499, 198 Ct.Cl. 298 (1972); Malandra v. United States, 195 Ct.Cl. 11 (1971); DeLano v. United States, 393 F.2d 517, 183 Ct.Cl. 379, 388 (1968). (Immigration and Naturalization Service practice under the Act of March 2, 1931.)

In order to add even more weight to its contention that the Service's practice

of excluding Sunday from its basic workweek was reasonable, the defendant points to the fact that the Bureau of Customs has, since 1944, followed a similar practice of excluding Sunday from its basic workweek. This practice has the effect of denying customs inspectors overtime compensation under the Federal Employees Pay Act of 1945, by virtue of the anti-pyramiding provision, since they receive special compensation for Sunday work under the Act of February 13, 1911, 36 Stat. 901, as amended, Act of February 7, 1920, 41 Stat. 402 as amended, 19 U.S.C. § 267 (1970), the act on which the Act of March 2, 1931 was patterned. Plaintiffs counter by asserting that, since the Bureau of Customs begins its administrative workweek and its basic workweek on the same day, Monday, its exclusion of Sunday from the basic workweek, while proper, in no way aids the defendant's position in the instant case. However, since the court has decided that the Service's practice of excluding Sunday from its basic workweek was proper in its own right, we do not deem it necessary to consider the practice followed by the Customs Bureau or to comment on the propriety thereof.

In conclusion, we hold that the Immigration and Naturalization Service properly exercised its discretion in excluding Sundays from the basic workweek. Furthermore, the Service's long-standing interpretation and application of the pertinent statutes and implementing regulations is reasonable and is therefore entitled to considerable weight. Plaintiffs have already received all extra compensation due them and are therefore not entitled to recover in this suit.

Accordingly, defendant's motion for summary judgment is granted, plaintiffs' cross motion for summary judgment is denied, and plaintiffs' petitions are dismissed.