KuNzig, Judge,
delivered the opinion of the court:
This is a civilian pay suit in which plaintiffs basically challenge the exercise of Department of Defense (DOD) discretion in determining the in-port per diem rates for Naval Oceanographic Office (NAVOCEANO) personnel. DOD now authorizes payment of shipboard per diem rates for the first three days a NAVOCEANO vessel is in any port outside the Continental United States (CONUS), with higher locality per diem rates permitted for all subsequent days in port. We fail to find any abuse of administrative discretion and conclude plaintiffs are not entitled to locality per diem rates for their first three days in port.
Plaintiffs are civilian shipboard personnel employed by NAVOCEANO aboard ships throughout the world conducting oceanographic and hydrographic surveys. The material facts herein are not in dispute. Survey schedules normally allow for approximately 25 to 28 days at sea and five to seven days in various ports. While assigned to a NAVOCEANO vessel, whether at sea or temporarily in some foreign port, plaintiffs receive lodging aboard ship. Defendant has stated (and plaintiffs have not disputed) these quarters are provided without charge.
Prior to July 1, 1970, NAVOCEANO personnel were paid locality per diem rates for the entire time the vessel on which they were assigned was in any port outside CONUS. Locality per diem rates are based upon varying local costs of living and are specifically established by the Department of State for various cities and ports around the world. On June 29, 1970, the Commander of NAVOCEANO issued NAVOCEANONOTE 4650 which, effective July 1,1970, reduced the in-port per diem rates from the locality per diem to the lower shipboard per diem for all NAVOCEANO civilian personnel unless the employee was required to maintain commercial quarters during the in-port visits.
*563 Following several challenges by NAVOCEANO civilian personnel, the Comptroller General, in Decision No. B-170655, 50 Comp. Gen. 389 (1970), held the NAVOCEANO determination paying only shipboard per diem rates for all in-port time to be inappropriate. While sanctioning the payment of shipboard per diem rates for a “reasonable stopover period” for refueling and taking on new supplies, the Comptroller General found entitlement to the higher locality per diem rates for any in-port period in excess of a “reasonable stopover period.” Finding a three-day stopover not unreasonable for refueling and taking on supplies, the Comptroller General ruled NAVOCEANO personnel entitled to payment of shipboard per diem rates for the first three days in port, with higher locality per diem rates for stopover days in excess of three. The DOD immediately conformed to this decision and codified it into regulation on October 1, 1971.[1]
Plaintiffs’ challenge of the denial of locality per diem rates is before this court on cross-motions for summary judgment. Citing our jurisdiction under 28 U.S.C. § 1491, plaintiffs seek payment of locality per diem rates for the first three days of any in-port stopover, retroactive to July 1, 1970, and retroactive payment of locality per diem rates for any other days in any port which was denied them due to the DOD policy change between July 1, 1970 and December 15, 1970. For the reasons stated below, we hold for defendant.
Plaintiffs first assert this denial of locality per diem rates in essence compels them to occupy government-furnished lodging. Plaintiffs maintain this mandatory use of government-furnished lodging contradicts the prohibitory language against such practices found in 5 U.S.C. § 5911(e). Defendant counters that 5 U.S.C. § 5911(e) does not apply to plaintiffs’ situation since it only prohibits requiring the occupancy of government-owned rentad quarters. We agree with defendant.
It is a long-established principle of statutory construction that a clear and unambiguous statute speaks for itself. This *564 court has long recognized that, while judicial tribunals may go beyond the language contained in a statute to ascertain its meaning, they must be careful in departing from statutory terms in order to avoid doing violence to them. Crawford v. United States, 179 Ct. Cl. 128, 138, 376 F. 2d 266, 272 (1967), cert. denied, 389 U.S. 1041 (1968). Thus, the unambiguous wording of a statute shall be given its plain and commonly understood meaning. Selman v. United States, 204 Ct. Cl. 675, 683, 498 F. 2d 1354, 1358 (1974); Benton v. United States, 203 Ct. Cl. 263, 269, 488 F. 2d 1017, 1020 (1973); Ricker v. United States, 184 Ct. Cl. 402, 406, 396 F. 2d 454, 456 (1968); Prudential Ins. Co. of America v. United States, 162 Ct. Cl. 55, 65, 319 F. 2d 161, 166 (1963).
5 U.S.C. § 5911 (e) reads as follows:
(e) The head of an agency may not require an employee or member of a uniformed service to occupy quarters on a rented betsis, unless the agency head determines that necessary service cannot be rendered, or that property of the Government cannot adequately be protected, otherwise, [emphasis added] [2]
A simple reading of the above statute clearly shows that it only applies to government-furnished quarters on a rental basis. Since it is not disputed that shipboard quarters are provided free of charge, defendant is quite correct in pointing out that 5 U.S.C. § 5911(e), on its face, has no application in the instant situation.
Although unnecessary, a review of the legislative history of 5 U.S.C. § 5911 is supportive of defendant’s position. 5 U.S.C. § 5911 was enacted in 1964 “to restate and clarify existing statutory authority and regulations which authorize the providing by the Government of rented quarters and certain related services for Government personnel.” [emphasis added] H.E. Bep. No. 1459, 88th Cong., 2d Sess. 2 (1964). Subsection (e) [orginally Section 5 of the Act] “restates the prohibition against forcing employees to occupy Government quarters on a rental basis * * * [and] is applicable to all quarters for which the occupants are charged *565 a rental (whether Government-owned or Government-leased), but is not applicable to free quarters.” [emphasis added] H.R. Rep. No. 1459, 88th Cong., 2d Sess. 6 (1964). Thus, even if the language of this statute were not clear and unambiguous, the statements contained in the House Report leave little doubt that Congress did not intend 5 U.S.C. § 5911 (e) to apply to free quarters provided by the Government.
As 5 U.S.C. § 5911(e), by its express language, applies only to rental quarters and since this interpretation is buttressed by the language found in H.R. Rep. No. 1459, we conclude this statute has no application to plaintiffs’ situation, and, therefore, does not serve to invalidate the Government’s imposition of lower shipboard per diem rates.
Since we reject plaintiffs’ primary argument, we must focus secondly on the alternative theories advanced. Although not articulately stated in their brief, plaintiffs seem to assert two alternative grounds: first, the denial of locality per diem rates for the first three days in port after December 15,1970 constitutes an abuse of agency discretion; and second, absent an abuse of agency discretion, the denial is technically defective because the shipboard per diem subsection of the Joint Travel Regulations (JTRs) applies only to travel and temporary duty status within CONUS. We reject both arguments.
The abuse of agency discretion argument is predicated on plaintiffs’ assertion that the three-day “reasonable stopover period” finding by the Comptroller General was arbitrary and, therefore, any implementation by DOD [3] of this arbitrary finding constitutes an abuse of agency discretion. The problem with this argument is that it tends to deal with the implementation of the Comptroller General’s Decision No. B-170655 in a vacuum and fails to address the exercise of DOD discretion which led to the Comptroller General’s decision. A preliminary issue which plaintiffs do not raise expressly, but which this court cannot avoid, is whether DOD, *566 in issuing NAYO CE AN ON OTE 4650, abused its discretion in altering its per diem rate payment policy.[4]
NAYOCEANONOTE 4650 directed payment of shipboard per diem rates “where travelers[5] aboard Government ships are not required to maintain commercial quarters ashore,” effective July 1, 1970. [emphasis added] Prior to that date, DOB civilian personnel in this travel category were paid the higher locality per diem rates for all time ashore when commercial quarters were utilized, regardless of whether such utilization was voluntary or required. This directive, issued after an interpretation of JTR. par. C8101-2d by the Director, Office of Civilian Manpower Management, reflected an agency recognition that the determination of the actual temporary duty station is a prerequisite to a particular applicable per diem rate. In the case of civilian personnel assigned to a temporary duty station aboard a Government ship, the per diem rate applicable to the ship would be paid, whether at sea or in port, unless, by agency direction, personnel were required to maintain commercial quarters ashore. In effect, this interpretation recognized that shipboard personnel are assigned to temporary duty on the ship itself, and their temporary duty stations only change to port when officially ordered.
Thus, as of July 1, 1970, DOD exercised its discretion in clarifying the temporary duty station of civilian personnel aboard Government ships: the temporary duty station is the ship, whether at sea or in port, unless said personnel would be required to maintain commercial quarters ashore; if so required, the temporary duty station would then become the port. Appropriate existing subsections of the JTRs would then be applied, with the per diem rates contained therein being awarded.
*567 The proper standard for our review of the Department of Defense decision regarding the clarification of the situs of a temporary duty station for the purpose of determining the applicable per diem rate is whether there is a rational basis in the record for that determination. “Where an exercise of administrative discretion is involved, the action will be disturbed only if plaintiffs succeed in establishing that it is ‘so clearly wrong’ as to be arbitrary.” Drucker v. United States, 204 Ct. Cl. 514, 517-18, 498 F. 2d 1350, 1352 (1974), citing Albert v. United States, 194 Ct. Cl. 95, 101-02, 437 F. 2d 976, 979 (1971).
By focusing on Comptroller General Decision No. B-170655 and the regulation promulgated by DOD to implement the decision, plaintiffs have completely ignored the question of whether the July 1, 1970 change, which formed the basis for the appeal to the Comptroller General, constitutes an abuse of agency discretion. And, in ignoring the question, it is obvious that plaintiffs have failed to meet their heavy burden of proving that the July 1,1970 DOD action was so arbitrary as to be clearly wrong. Drucker, supra. See also United States v. Shimer, 367 U.S. 374, 381-82 (1961). But even if plaintiffs had addressed this issue, the evidence contained in the Joint Stipulation of Facts refutes any argument that no rational basis existed for the July 1, 1970 per diem rate change.
While it is true that other reasons were expressed in support of this per diem rate change, one fundamental reason (included in the Joint Stipulation of Facts) was expressed in all of the correspondence which preceded the issuance of NAVOCEANONOTE 4650: the opinion that shipboard per diem rates should be paid unless civilian personnel were required to maintain commercial quarters ashore. This justification for lower shipboard per diem rates, evidenced in the record, certainly satisfies the rational basis test.
Since we therefore hold DOD did not abuse its discretion by implementing the July 1, 1970 change in per diem rate policy, it is difficult to see how the agency could have abused its discretion by subsequently modifying the policy to the benefit of plaintiffs; and it is even more difficult when we in- *568 elude the additional factor that the modification was made pursuant to a decision by the Comptroller General.
It is important to note that Comptroller General Decision No. B-170655 nowhere indicated that the July 1,1970 action constituted an abuse of discretion. On the contrary, the Comptroller General agreed with DOD that the vessel, and not the port, was the employees’ temporary duty station,[6] and, therefore, under ordinary circumstances, i.e., unless required to maintain commercial quarters ashore, said employees are entitled only to the shipboard per diem rates.
We have not been asked to decide whether the Comptroller General’s decision to reinstate the locality per diem rate for periods exceeding three days should be upheld. DOD, by incorporating his decision into the Joint Travel Eegulations, has acquiesced in this position. We are only asked to decide whether DOD’s implementation of his decision with respect to shipboard per diem for the first three days in port constitutes an abuse of agency discretion. Clearly it does not.
In short, plaintiffs have not shown DOD abused its discretion in denying NAVOCEANO personnel locality per diem when in a foreign port. At best, plaintiffs have shown only that a change was made on July 1, 1970 and that a modification of this change was subsequently made granting locality per diem after a predetermined waiting period. Neither change is inherently unreasonable.
Plaintiffs’ final argument, that the application of shipboard per diem rates to personnel outside CONUS is technically defective, is equally without merit. The gravamen of this position is the fact that JTE par. C8101-2 is entitled “TBAVEL WITHIN THE CONTINENTAL UNITED STATES BY BEGULAB SALABIED EMPLOYEES.” *569 Plaintiffs allege, in effect, that establishment of shipboard per diem rates has been placed under the label “within the United States,” and therefore cannot be applicable outside CONUS. Yet the shipboard per diem subsection itself contains cross reference to JTR par. C8101-3b (6). This latter cross reference is found under quite the opposite label “TRAVEL OUTSIDE THE CONTINENTAL UNITED STATES BY REGULAR SALARIED EMPLOYEES.” Clearly, therefore, shipboard travel is discussed under both labels in the JTRs which may conceivably suggest minor mislabeling.
The simple answer to plaintiffs’ argument is that the agency delegated the authority for promulgating and interpreting the JTRs is presumed to have carried out such responsibilities properly. Thorpe v. Housing Authority, 393 U.S. 268, 276 (1969); Barrington Manor Apts. Corp. v. United States, 198 Ct. Cl. 298, 304, 459 F. 2d 499, 502-03 (1972); Ganse v. United States, 180 Ct. Cl. 183, 189, 376 F. 2d 900, 904 (1967). Plaintiffs, by merely pointing out slightly confusing subsection labels, have shown nothing which significantly rebuts the presumption of correct interpretation.
To summarize, we hold 5 U.S.C. § 5911(e) is inapplicable to plaintiffs’ situation because the statute, on its face, is not directed at quarters provided free of charge. Additionally, it is determined that plaintiffs have failed to meet their burden of proving any abuse of DOD discretion, either in changing its per diem practices effective July 1, 1970, or in the subsequent modification of the practice after December 15, 1970 (particularly since this modification accrued to the benefit of plaintiffs). Finally, we reject plaintiffs’ assertion that the regulations applied were technically defective and hold defendant has properly interpreted and applied its own regulations. Therefore, we conclude plaintiffs are not entitled to the moneys sought, either for the first three days denied after July 1, 1970 or for any other days denied between July 1, 1970 and December 15,1970.
Accordingly, plaintiffs’ motion for summary judgment is denied, defendant’s cross-motion is granted, and the petition is dismissed.

 On October 1, 1971, Joint Travel Regulation (JTR) par. C8101-3b(6) was amended to reflect the Interpretation of the regulations made by Comptroller General Decision No. B-170655.

 U.S.C. § 5911(a) defines quarters as follows; “quarters owned or leased by the Government.”

 See note 1, supra.

 DOD’s discretion in establishing per diem rates for various travel or temporary duty stations is not disputed. 6 U.S.C. § 5702 is the statutory basis under -which Federal employees are entitled to per diem allowances. In pertinent part, it states:
“An employee, while traveling on official business away from his designated post of duty, is entitled to a per diem allowance prescribed by the agency concerned. * * *” [emphasis added]
There can be little question that the above language grants discretion to Government agencies in determining what per diem allowances are applicable to different categories of travel or temporary duty status.

 Plaintiffs agree the term “travelers” includes persons assigned to temporary duty on Government ships.

 In Comptroller General Decision No. B-170655, 50 Comp. Gen. 389, 390 (1970), the following was stated:
“The employees here Involved are assigned extended tours of temporary duty aboard specific survey vessels and during voyages, including stopovers for talcing on fuel and other supplies, the vessels — as distinguished from a port at which a stop might he made — are, in essence, the employees’ temporary duty stations. * * * We, therefore are of the opinion that the employees Involved are entitled under ordinary circumstances only to the per diem prescribed in paragraph C8101-2d, (shipboard per diem rates) quoted above.” [citation omitted] [emphasis added]