BENNETT, Circuit Judge,
with whom BALDWIN, KASHIWA, and JACK R. MILLER, Circuit Judges, join, dissenting.
I respectfully dissent from the majority’s holding that the United States Claims *1387 Court loses equitable jurisdiction under 28 U.S.C. § 1491 (Supp. V 1981), amended by the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, § 133(a), 96 Stat. 25, 40, if a petition or motion is not filed before the award of the contract. Since I believe that the Claims Court had jurisdiction of the “claims” (actions or lawsuits) before it,[1]1 do not reach the transfer issue. I join Judge Kashiwa’s dissent. I will add a few observations of my own which, together with those reasons already enumerated by Judge Kashiwa, convince me that the majority’s holding is in serious error. Specifically, two considerations strongly suggest that the Claims Court had equitable jurisdiction over this case: (1) the general purpose of section 1491 (the Tucker Act); and (2) the purposes of the legislation granting the Claims Court equitable jurisdiction over bid protests.
The majority’s view is contrary to the general purpose of section 1491 (the Tucker Act). The Tucker Act is the primary statute that defines the subject matter jurisdiction of the Claims Court. Nowhere in the statute is there any' indication that Congress intended to define the procedural prerequisites to instituting a lawsuit — e.g., that the claim be timely filed. Rather, one looks to other statutes to determine whether a claim is timely.[2] According to the majority, however, Congress has expanded the Tucker Act by not just enlarging the relief available in bid protest suits, but also by adding a procedural requirement that the “claim” be filed in the Claims Court before the award of the contract. In the context of the Tucker Act, it seems puzzling why Congress would for the first time add a time limitation to this statute which was otherwise concerned only with defining the subject matter of a court. On the other hand, if it is accepted that the language used by Congress in section 1491(a)(3)— “any contract claim brought before the contract is awarded” — is only meant to define the subject matter where equitable relief is available (namely, bid protests), then such matters as when the claim is filed in the Claims Court become irrelevant; i.e., the time of filing would not change the underlying cause of action. It does not seem likely that Congress would establish a time limit as an absolute bar to jurisdiction without precisely defining the limit as such.
The language used by Congress in section 1491(a)(3) is arguably susceptible of different interpretations, as the several opinions filed today attest. Assuming for discussion only that the term “claim” is ambiguous, then it might be helpful to discern what Congress was attempting to accomplish in enacting this legislation. With the intent of Congress in mind, it should be easier to provide an interpretation that furthers the purposes of the statute.
I perceive two distinct ends which Congress contemplated in enacting the legislation before us: (1) that the Claims Court have jurisdiction to grant equitable relief so as to promote the integrity of the bidding process; and (2) that judicial interference be kept to a minimum' so as not to delay the performance of government contracts unduly.[3]
*1388 A limitation on the jurisdiction of the Claims Court on the basis of an arbitrary procedural error does little to promote the integrity of the bidding process. There is no implication in this case that the contractors here were less than diligent in bringing their claims to the contracting officer, or, for that matter, were dilatory in filing their claims in the Claims Court. The contractors’ error (if the majority’s interpretation is accepted) is that they foolishly waited for the contracting officer to issue his decision on the protests before filing in the Claims Court.[4] Furthermore, the majority’s interpretation would, in many instances, give the contracting officer the power to prevent the contractor from seeking equitable relief in the Claims Court by awarding the contract before rendering a decision on the claim, as happened here. This creates a paradoxical situation in which the contracting officer, whose allegedly illegal action forms the basis for the bid protest, is granted the power to determine for the contractor the forum in which he must press his suit.
Regarding the second goal of Congress, the ultimate result of the majority’s holding that the Claims Court lacks jurisdiction will be greater judicial interference in the contracting process. The arbitrary cut-off or loss of jurisdiction after award will, as noted by Judge Kashiwa, result in a race to the courthouse to file premature litigation to ensure that a bidder is not denied access to the Claims Court. Disputes brought first to the contracting officer result in an overall reduction in litigation. This is the purpose of the standard government contract disputes clause and of the Contract Disputes Act of 1978, both of which require that any claims first be submitted to the contracting officer for exhaustion of administrative remedies before suit.[5] The statutory scheme endorsed by the majority actually discourages the informal resolution of bid protest claims, at the administrative level, as the luckless bidder who awaits a decision by the contracting officer is proceeding at its own risk. The Claims Court may therefore have to decide a multitude of cases that might have been settled administratively. In sum, I fail to see any legitimate goal, contemplated by Congress, which is served here by the divestiture of jurisdiction after the award of the contract when a bid protest claim had been made to the contracting officer before award.
The majority places great emphasis on its contention that “claim” as used in 28 U.S.C. § 1491(a)(3) should be accorded the same meaning as that word is used in subsections (a)(1) and (a)(2) and that the Claims Court would not have jurisdiction over any “claim” before a petition is filed with the court. However, I do not believe that the word “claim” is used in subsections (a)(1) and (a)(2) in the sense of a limit on jurisdiction. “Claims” are indeed filed in the Claims Court, but the common usage of the word would also apply to a demand against the government before the “claim” actually becomes a lawsuit.[6] Even if a “claim” were *1389 never filed in court it would be common usage to say that one has a “claim” against the government. The majority opinion concedes this when it states:
It is hard to visualize a “claim” properly called such in court which did not accrue as a “claim” at some time earlier than its presentation in court. Indeed, the entire statute of limitations jurisprudence rests on that concept. [Emphasis in text.]
Having said this, however, the court concludes in this case that the word “claim” has a special meaning, although this seems wholly gratuitous in the context of the statute here which does not embellish the term but uses it in its common, generic sense.
The majority’s exhaustive treatise on its concept of the “legislative history” (i.e., Senate and House reports, testimony, letters, speeches, rejected amendments and withdrawn bills)[7] can be likened to a house of cards whose structural stability is dependent on the majority’s following conclusion: “In short, the legislative history indicates that the Senate and House Reports used the terms ‘action’ and ‘claim’ interchangeably, as both Houses have often done, both referring to contract actions/claims brought in the Claims Court prior to award.” This conclusion, however, is without any support whatsoever. There is no evidence cited which indicates that Congress meant to use “claim” and “action” interchangeably, other than the vague suggestion that this is a certain lack of semantic precision for which Congress is famous. The simple fact is that" when Congress actually enacted the statute it chose to use the phrase “any contract claim,” not “action,” not “lawsuit,” and not any other description which explicitly supports the majority’s interpretation.
“Congress may be presumed not unskilled in the use of words and highly likely to have enacted what it intended. It is foolish to abandon this presumption where the legislative history is perceivably full of pitfalls that cannot readily be avoided.” Hart v. United States, 585 F.2d 1025, 1035, 218 Ct.Cl. 212 (1978).
Accordingly, I would hold that under section 1491(a)(3) the Claims Court had equitable jurisdiction since bid protest claims were made and were pending and that this jurisdiction was not lost when an award was made later before suit was filed. By the same token, if the contractor does not submit a bid protest claim to the contracting officer or the Claims Court before an award is made, he cannot ask equitable relief of the Claims Court. The majority holds that if the contractor files an action for equitable relief directly in the Claims Court before an award is made, then that court has jurisdiction, and presumably a subsequent award should not affect its jurisdiction. The majority’s narrow interpretation gives the Claims Court only fleeting equitable jurisdiction. In fact, this interpretation robs the statute of much serious meaning, a result Congress surely did not contemplate for we cannot ascribe to it the conscious intent to do a foolish or useless thing.
The court has labored hard, at great length, and for several months now, .to come up with the decision announced today. It has been difficult in part because the court has had to search through a dense jungle of legislative history to find a rationale it could use to rewrite the statute. As enacted 28 U.S.C. § 1491(a)(3) reads: '
To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant ... equitable ... relief.
As rewritten by the majority in this case the statute now reads:
To afford relief on a contract action (lawsuit) brought in court before the con *1390 tract is awarded, the court shall have jurisdiction to grant equitable relief.
This sweeping judicial legislation, severely restricting the scope of section 1491(a)(3), is justified on the basis of an interpretation of legislative history. This suggests that Congress at the very least was ambiguous and did not know what it was saying when it wrote the statute, thus requiring the court’s labored interpretation. As Judge Kashiwa demonstrates in his dissent, the legislative history can be read to support the plain English language used by Congress when it made a considered judgment to give the Claims Court broader jurisdiction than its predecessor, the Court of Claims, to provide equitable relief as well as money damages. But now we are told that “claim" means “action” which means lawsuit, and that “exclusive” means nonexclusive, and “any contract claim” means only those judicially processed. Possibly the majority’s opinion must go on at such great length to achieve its ultimate result because of its opening misstatement of the first issue. It says that issue is:
Whether the Claims Court lacks jurisdiction to grant equitable relief in a suit brought after a contract has been awarded.
I would concede that the court has no such jurisdiction if that is the only fact. But, here it is not. A more accurate statement of the issue is:
Whether the Claims Court lacks jurisdiction to grant equitable relief when, before award or before suit is filed, a claim is made to the contracting officer as a bid protest and whether, therefore, Claims Court jurisdiction then vests, within the meaning of 28 U.S.C. § 1491(a)(3), giving that court “exclusive” jurisdiction “[t]o afford complete relief on any contract claim brought before the contract is awarded .... ”
A colleague in the majority, concurring separately in the majority’s result, nevertheless describes that as an unhappy result, saying: “The main trouble with the statute as construed by our majority is that it achieves an insignificant and absurd re-suit.” He points out, and properly so, that a bidder will have to file a Claims Court suit “without waiting to know if he has anything to protest. He may end up having sued to enjoin an award to himself.... This is a zany scheme that, by strict construction analysis, Congress enacted.” He continues: “[I]t appears probable that many litigants wishing to obtain complete and entire relief, both injunction and bid preparation costs, will have to sue in two separate tribunals in order to do so.”
I accept this perceptive evaluation of the majority’s product but, with greatest respect, I do not think that strict construction of this statute accounts for or necessitates an “insignificant and absurd result.” Nor do I believe that the fault lies with Congress for such a result, rather than with the court. True strict construction would apply the statute simply as it reads, to encompass “any contract claim.” United States v. American Trucking Associations, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). It is well-established in the law that in interpretation of statutes and regulations based on statutory authority “[ajbsurd and whimsical results of interpretation, unrelated to congressional purpose, are to be avoided.” Kantor v. United States, 205 Ct.Cl. 1, 6-7 (1974); see also Steuer v. United States, 207 Ct.Cl. 282, 294 (1975); Anderson v. United States, 490 F.2d 921, 928 (Ct.Cl.), cert. denied, 419 U.S. 827, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974). “Thus, the unambiguous wording of a statute shall be given its plain and commonly understood meaning.” Boege v. United States, 206 Ct.Cl. 560, 564 (1975); Prudential Insurance Company v. United States, 319 F.2d 161, 166 (Ct.Cl.1963). As Mr. Justice Frankfurter said,-in speaking of the proper attitude with which we should approach the problem of statutory construction: “[0]ur problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain — neither to add nor to subtract, neither to delete nor to distort.” 62 Cases of Jam v. United States, 340 U.S. 593, 596, 71 S.Ct. 515, 518, 95 L.Ed. 566 (1951).
*1391 Application of these simple rules to interpret the statute here would avoid the tortuous result achieved by the majority through a protracted semantic exercise, reliance on questionable legislative history, and bald assertions of what the law is and what is relevant or irrelevant to the case. Application of the commonly accepted rules of statutory construction would assure a reasonable result not reflecting so unfavorably on the ability of Congress to express its will in legislation. Surely this would best serve the congressional purpose, the public contract community, the interests of justice, and certainly the United States Claims Court whose new equitable jurisdiction is much diminished by the majority’s successful assault upon it.

. The majority’s interesting discourse on Congress’ “misleading” use of the word “jurisdiction” in section 1491(a)(3) (see note 6 of the majority’s opinion) is undoubtedly a logical extension of the theory that “claim” means “action,” which means “lawsuit.” If the majority finds the word “jurisdiction” misleading, then it should affirm the Claims Court’s dismissal of this case on the basis of lack of “power,” not “jurisdiction.”

. For example, 28 U.S.C. § 2501, amended by the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, § 139(a), 96 Stat. 25, 42, imposes a 6-year period of limitations on “[e]very claim of which the United States Claims Court has jurisdiction”; 41 U.S.C. § 609, amended by the Federal Courts Improvement Act of 1982, § 161(10), 96 Stat. 49, which authorizes a “direct access” suit in the Claims Court under the Contract Disputes Act, permits a contractor to file within 12 months of the date of receipt of the decision of the contracting officer.

. H.R.Rep. No. 312, 97th Cong., 1st Sess. 43 (1981) states:
“Since the funds which the Government utilizes to purchase goods and services are derived solely from public sources, the public has strong interest in the ability of the Government to fulfill its requirements in these areas at the *1388 lowest possible cost. Accordingly, in the very vast majority of circumstances, the Government must be permitted to exercise its right to conduct business with those suppliers it selects and to do so in an expeditious manner. Yet, at the same time the Government must respect the rule of law. If it deviates from that norm it must be accountable for its actions in the courts, which are equipped with certain powers to redress proven wrongs. Hopefully, by modestly increasing the powers of the Claims Court, the needs of a cost-effective government contract system and of a lawful government contract system will both be met.”
See also S.Rep. No. 275, 97th Cong., 1st Sess. 32, 33 (1981).

. In Schlosser’s case, the contractor was told on September 30, 1982, by the contracting officer, in writing, that it would be informed of his decision on the protest “before an award is made.”

. Lest the majority, or anyone else, be misled, it is not argued here that section 1491(a)(3), or any other statute applicable to this case, requires an “exhaustion of administrative remedies” in a bid protest suit filed in the Claims Court. It is merely pointed out that Congress has a general preference for the nonjudicial resolution of contract and bid protest disputes where feasible.

. See, e.g., 28 U.S.C. § 2501, as amended, which states: “Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition is filed within six years after such claim first accrues.” It is of *1389 course absurd to suggest that “claim” in this context means “lawsuit.”

. “Legislative history” other than official committee reports is highly suspect if attempted to be used to establish congressional intent. Sel-man v. United States, 498 F.2d 1354 (Ct.Cl. 1974). Congressional committee reports are even improperly used to override the plain language of a statute. Hart v. United States, 585 F.2d 1025, 218 Ct.Cl. 212 (1978).